**James O. BLAIR, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

April 29, 1960.

John J. Tribell, Pineville, for appellant.

John B. Breckinridge, Atty. Gen., William F. Simpson, Asst. Atty. Gen., for appellee.

MOREMEN, Judge.

James O. Blair was convicted of the offense of transporting alcoholic beverages without a license, and was fined the sum of $100. He was charged with failure to comply with KRS 243.020, which is a section of the alcoholic beverage control law.

The usual case which we review arises under Chapter 242 of the Kentucky Revised Statutes. This chapter is popularly called Local Option Law and is concerned generally with offenses which arise after a territory has exercised its option to be dry and the accused nevertheless attempts to engage in some phase of manufacturing, selling or transporting for the purpose of sale intoxicating liquor in a manner prohibited by the chapter.

Chapter 243 of the Kentucky Revised Statutes, popularly known as the Alcoholic Beverage Control Law, deals with various phases of the legitimate manufacture, storage, sale, purchase or transportation of alcoholic beverages, in most instances in wet territory.

Subsection (1) of KRS 243.020 reads:

"No person shall do any act authorized by any kind of license with respect to the manufacture, storage, sale, purchase, transporting or other traffic in alcoholic beverages unless he holds the kind of license that authorizes such act."

The Commonwealth insists that appellant offended against this section.

The testimony is undisputed that about eight persons, most of whom were residents of Cumberland in Harlan County, decided to go fishing at a lake in Claiborne County, Tennessee. Both Cumberland and Claiborne County are in wet territory, but beer costs considerably more per case in the latter place. The group pooled their money and purchased thirty-six cases of beer (they planned to stay about a week) from a licensed retailer in Cumberland. They left Cumberland in several cars on September 1, 1959, and when appellant was driving through Bell County with the beer in his car he was arrested and the beer was found. It is not necessary for us to go into the details of the arrest and seizure, even though we have grave doubts as to their validity.

The record does not disclose whether the arrest was made in wet or dry territory. However, the establishment of that fact would be of no importance because no alleged violation of Chapter 242 is involved. We will direct our attention to a determination only of whether it is necessary for every person who moves alcoholic beverages to obtain a license under the section above quoted.

We may learn the purpose for which the license is intended by reading the various sections of the act concerned with it.

As noted above, KRS 243.020 requires a license when one is engaged in "transporting or other traffic in alcoholic beverages" and the whole chapter deals with the legitimate manufacture and transportation of alcoholic beverages.

Subsection (8) of KRS 243.030 provides that a transporter's license may issue on the payment of a fee of $10 per annum, and subsection (5) of KRS 243.040 provides that if the transporter is engaged in carrying only malt beverages, the license fee is $5 per annum. It may be of some interest to note that subsection (2) of KRS 243.110 provides that the holder of a transporter's license may also obtain a special storage or warehouse license, and KRS 243.210, which defines the business limits authorized by a malt beverage transporter's license, reads:

"A malt beverage transporter's license shall authorize the licensee to transport malt beverages for hire to or from the licensed premises of any licensee under KRS 243.020 to 243.670 if both the consignor and the consignee in each case are authorized by the law of the states of their residence to sell, purchase, ship or receive the malt beverages."

We think it would be a strained construction indeed if we read into the act a legislative intent to require every person in both wet and dry territory to obtain a transporter's license before he could carry the liquor, which he had legally purchased, to his home or anywhere else. Patently, the statutes are directed to those who are engaged in commerce, and require a license before they may engage in the liquor business.

If the principle of contemporary construction of a statute is ever to be applied, this case offers a splendid opportunity for its application because until this case arose,

we knew of no instance where any law enforcement agency had postulated such a novel thesis.

The peremptory instruction requested by the defendant should have been sustained and the judgment is therefore reversed.